# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Claude Graham, *et al.*,

        Plaintiffs,

     v.                            Case No. 1:06cv565

City of Cincinnati, *et al.*,             Judge Michael R. Barrett

        Defendants.

## <u>ORDER</u>

       This matter is before the Court upon Defendants City of Cincinnati, Officer Thomas Rackley, Officer Evan Evans, and J. Rita McNeil's Motion to Dismiss (Doc. 7)  Plaintiffs Claude Graham and Derrick Thomas filed a Memorandum in Opposition (Doc. 21) and Defendants filed a Reply (Doc. 21).  This Court held oral argument on Defendants' Motion on July 25, 2007.  At that time, the Court orally granted Defendants' Motion to the extent that it sought to dismiss the claims against the City of Cincinnati and J.Rita McNeil.  (Doc. 25)  Plaintiffs' claims remain pending against Officers Thomas Rackley and Evan Evans.

       Plaintiffs bring claims for unreasonable search and false imprisonment under 42 U.S.C. § 1983 and the Fourth Amendment.  Plaintiffs also bring a claim pursuant to 42 U.S.C. § 1988 for attorney fees.[1]

## I.    <u>BACKGROUND</u>

       Plaintiffs reside on Madison Road in Cincinnati, Ohio.  (Doc. 1,  ¶¶ 1, 2)  On August

---

[1]It is well established that claims made under 1988 allow for reasonable attorney's fees awarded to the "prevailing party" of a 42 U.S.C.§ 1983 litigant.  *Berger v. City of Mayfield Heights*, 265 F.3d 399, 403 (6th Cir. 2001).

24, 2004, Thomas was in the residence with his friend, Devon Wordlaw, listening to music. (Id., ¶ 8)  Defendant Officer Evans was investigating an aggravated robbery which occurred around the corner.  Plaintiffs allege that Evans, dressed in plain clothes, knocked on the door of the residence, grabbed Wordlaw, and placed him in a cruiser.  (Id., ¶ 11)  Officer Rackley, Officer Dews[2] and eight other police officers then entered the residence, several with weapons drawn.  (Id., ¶¶ 17, 19)  A police officer ordered Thomas to lie down, and then handcuffed him.  (Id., ¶¶ 20, 21)  Officer Rackley conducted a pat-down of Thomas.  (Id., ¶ 44)  Officer Dews escorted Thomas outside and placed him in a police vehicle for thirty minutes. (Id., ¶¶ 20-21, 24)  Plaintiffs claim that Defendants had no reason to believe Thomas had committed any criminal violation.  (Id., ¶ 44)

Plaintiffs also claim the Defendant Police Officers were never given written or verbal permission to enter their residence.  (Id., ¶ 38)  Plaintiffs allege personal items were destroyed during the search, or were missing after the search.  (Id., ¶¶ 26, 27, 29)

It appears from the record that health code violations were observed during the initial, warrantless search.  (Doc. 7, Ex. A)  A second search was conducted a week later under an administrative warrant.  (Id.)  During that search, evidence was discovered which led to criminal charges being brought against Graham for unlawful possession of dangerous ordinance in violation of Ohio Revised Code § 2923.17(A).  (Id.)  In the criminal matter, Graham filed a motion to suppress the evidence discovered during the search.  (Id.)  The state court denied the motion, and stated: "The Court finds that the initial warrantless entry into 6012 Madison Road by police officers on August 24, 2004 that led to the

---

[2]Not a named Defendant.

discovery of the health code violations that were the basis for the issuance of the administrative search warrant in this case was proper and was not violative of the Ohio or United States Constitutions as Detective Evan Evans of the Cincinnati Police Department obtained verbal consent to enter the property. Therefore, The Court finds that a valid exception to the warrant requirement existed in this case." (Id.) Ultimately, Graham plead guilty to the charges against him. (Doc. 7, Ex. D)

On September 16, 2004, Graham filed a complaint with the City of Cincinnati Citizen Complaint Authority alleging improper search and destruction of property. (Id., ¶ 31) The Citizen Complaint Authority Board, "conclud[ed] there is sufficient evidence to determine the incident occurred and the actions of the officer were improper." (Doc. 1, Ex. A)

## II. **ANALYSIS**

### A. **Motion to Dismiss Standard**

As the Supreme Court recently held in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, (May 21, 2007), a complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974 (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969.

### B. **Section 1983**

Section 1983 imposes civil liability on a person acting under color of state law who

deprives another of the "rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  Therefore, a plaintiff must allege two elements to establish a *prima facie* case under section 1983: (1) that the action occurred "under color of law"; and (2) that the action was a deprivation of a constitutional right or a federal statutory right. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).  There appears to be no dispute that the alleged actions occurred under the color of law.

### C.  Qualified Immunity

Qualified immunity will generally shield government officials from individual liability under section 1983 if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *citing Procunier v. Navarette*, 434 U.S. 555, 565 (1978).  Qualified immunity involves a two-step inquiry:

> First, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred.  If the court finds a constitutional violation, it must then consider whether the violation involved " 'clearly established constitutional rights of which a reasonable person would have known.' "

*Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002), *quoting Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial."  *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994), *citing Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir.

1986).  Once the issue of qualified immunity is properly injected in the case either by a motion to dismiss, an affirmative defense, or a motion for summary judgment, the plaintiff is obliged to present facts which if true would constitute a violation of clearly established law.  *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987).  Rackley and Evans argue that they are entitled to qualified immunity against Plaintiffs' claims for unreasonable search and false imprisonment.

### 1. *Unreasonable Search*

Under the Fourth Amendment, "searches and seizures inside a home without a warrant are presumptively unreasonable."  *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 996 (6th Cir. 1994), *quoting Payton v. New York*, 445 U.S. 573, 586 (1980).  "Even if police have probable cause to arrest a suspect, a warrant is required for police entry into the suspect's house unless there are exigent circumstances that excuse the warrant requirement."  *O'Brien*, 23 F.3d at 996, *citing Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971).  The Sixth Circuit has recognized three circumstances that justify a warrantless entry into a home: (1) "hot pursuit" of a fleeing subject; (2) immediate threat of harm to police officers or the public; and (3) immediate action necessary to prevent destruction of vital evidence or thwart the escape of a known criminal.  *O'Brien*, 23 F.3d at 996 n. 5, *citing Jones v. Lewis*, 874 F.2d 1125, 1130 (6th Cir. 1989).  Consent also serves as an exception to the warrant requirement.  *O'Brien*, 23 F.3d at 997, *citing United States v. Mendenhall*, 446 U.S. 544 (1980).

Defendants argue that to the extent Plaintiffs are bringing a claim for unlawful entry, their claim is barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).  Defendants argue that Plaintiffs' claim is barred because in the state court criminal

proceedings against Graham, the court found that there was valid consent for the initial search on August 24, 2004.

In *Heck*, the Court explained that "[w]hen a plaintiff's successful § 1983 damages action would necessarily imply that his sentence or conviction was invalid, the complaint must be dismissed unless the plaintiff can demonstrate that his conviction or sentence has been reversed on appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations or called into question by the issuance of a writ of habeas corpus in order to proceed with the § 1983 action. 512 U.S. at 486-87. The Court explicitly recognized a Fourth Amendment illegal search claim as the type of claim which, although related to a criminal conviction, would not necessarily imply the invalidity of a conviction if successful. The Court explained:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.

*Heck*, 512 U.S. at 487 n. 7 (citations omitted).

Plaintiffs are bringing a section 1983 claim of unreasonable search. Graham's state conviction was for unlawful possession of a dangerous ordinance. The Court finds that a successful claim for unreasonable search would not necessarily imply that his state conviction was invalid. The validity of the search is not an element of the crime of unlawful possession of a dangerous ordinance; and the fact of Graham's state court conviction has no bearing on his unreasonable search claim. The challenged search merely produced evidence that was introduced, or surely would have been introduced absent Graham's

guilty plea, in the state criminal proceedings. Therefore, the Court finds that *Heck* does not bar Plaintiffs' claims.

However, even though *Heck* is not applicable in this instance, this Court is bound by the principle of collateral estoppel. Title 28 U.S.C. § 1738 provides that authenticated records and judicial proceedings of any court of any state "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such state. . . ." *See Allen v. McCurry*, 449 U.S. 90, 104 (1980) (holding that state court decision on federal constitutional claim raised in state criminal proceedings is entitled to preclusive, "collateral estoppel" effect in a subsequent § 1983 civil action). The rules of the state that rendered a judgment govern the preclusive effect given to that judgment. *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466 (1982). Under Ohio law, collateral estoppel applies when the fact or issue: (1) was actually and directly litigated in the prior action; (2) was passed upon and determined by a court of competent jurisdiction; and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action. *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994).

Here, the issue of the constitutionality of the search was actually and directly litigated in the state court criminal proceedings; and the state court decided the search was proper. In addition, Graham, against whom collateral estoppel is being asserted, was a party in the prior action. Therefore, Plaintiffs are estopped from bringing a claim under the Fourth Amendment that the entry into their residence was unlawful. Accordingly, the Court finds that based upon the applicable law and the facts viewed in the light most favorable to Plaintiffs, Plaintiffs cannot show that a constitutional violation has occurred; and Defendants are entitled to qualified immunity on this claim.

However, Plaintiffs have also brought a claim of unreasonable search based upon the manner in which the search was executed.  Plaintiffs allege that personal items were missing or destroyed as a result of the search.  "[O]fficers executing search warrants must often damage property in order to perform their duty." *Hill v. McIntyre*, 884 F.2d 271, 278 (6th Cir. 1989).  Yet, "the manner in which a warrant is executed is subject to later judicial review as to its reasonableness." *Dalia v. U.S.*, 441 U.S. 238, 258 (1979); *see also Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) (permitting plaintiff to assert her property damage claim under Fourth Amendment).

A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 113 S.Ct. 538, 543 (1992), *quoting United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *see, e.g., Bonds v. Cox*, 20 F.3d 697, 701-02 (6th Cir. 1994) (holding that, under *Soldal*, damage to a house, including broken doors, mutilated vinyl siding, broken desks, and holes in walls, rises to the level of "meaningful interference" with one's possessory interests).  The Fourth Amendment protects against a seizure of property even if it occurs in a context in which privacy or liberty interests are not implicated.  *Soldal*, 113 S.Ct. at 545.  Based upon the applicable law, the facts viewed in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs have sufficiently alleged that a constitutional violation has occurred.

Next, the Court must determine whether the violation involved " 'clearly established constitutional rights of which a reasonable person would have known.' "  "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, or the district court itself, *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999), *citing Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994), or case law from other circuits which is directly

on point." *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997), *citing Cameron v. Seitz*, 38 F.3d 264, 272-73 (6th Cir. 1994).  It has been clearly established since 1984 that the destruction of property may qualify as meaningful interference constituting a seizure under the Fourth Amendment.  *Newsome v. Erwin*, 137 F.Supp.2d 934, 944 (S.D.Ohio 2000), *citing United States v. Jacobsen*, 466 U.S. 109, 113, 124 (1984).  Therefore, the Court concludes that Plaintiffs have sufficiently alleged a violation of a clearly established constitutional right, and Defendants are not entitled to qualified immunity.  The Court notes that the issue of  immunity may be raised again later in the proceeding.  *English*, 23 F.3d at 1089.

### 2.    *False Imprisonment*

A false imprisonment claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff.  *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005), *citing Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002).  This probable cause requirement applies even where the officer does not make a formal arrest.  *Dunaway v. New York*, 442 U.S. 200, 207 (1979); *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) ("Any arrest, whether formal or *de facto*, requires probable cause.").  However, certain temporary seizures are justified if the officers have a reasonable articulable suspicion that the detainee is or has engaged in criminal activity.  *United States v. Critton*, 43 F.3d 1089, 1094 (6th Cir. 1995); *see also Houston v. Clark County Sheriff Deputy John Does*, 174 F.3d 809, 814 (6th Cir. 1999) ("[a]though there is no bright line that distinguishes an investigative stop from a *de facto* arrest, the length and manner of an investigative stop should be reasonably related to the basis for the initial intrusion.").

In *Ingram v. City of Columbus*, 185 F.3d 579 (6th Cir. 1999), the Sixth Circuit held that the handcuffing and detention of the plaintiffs with the display of firearms certainly deprived plaintiffs of their freedom of action in a significant way, and thus constituted a seizure. *Id.* at 591, *citing United States v. Knox*, 839 F.2d 285, 289 (6th Cir. 1988).  The court explained: "While we have occasionally permitted the use of such tactics by officers to detain private individuals for investigative purposes, we have done so only where the officers making the seizures acted out of a justifiable fear of personal safety."  *Id.* at 591-92, *citing United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986); *United States v. Fountain*, 2 F.3d 656, 663 (6th Cir. 1993) (permitting detention by handcuffing of occupants of home in which officers had seized weapons and narcotics just one month earlier).  The court distinguished the warrantless search situation before it from that in *Michigan v. Summers*, 452 U.S. 692 (1981), where the Supreme Court held that "a warrant to search for contraband that is founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."  *Id.* at 705.

Here, Defendants were executing a warrantless search of Plaintiffs' residence.  At this stage of the proceedings, there is no evidence that Defendants had probable cause to detain Thomas or had a justifiable fear of personal safety.  Therefore, the Court concludes based upon the applicable law, the facts viewed in the light most favorable to the Plaintiffs, Plaintiffs have shown that a constitutional violation has occurred.  The Court also concludes that the violation involved " 'clearly established constitutional rights of which a reasonable person would have known.' "  The Sixth Circuit has recently explained that in June 2004, "the law was clearly established that, absent probable cause to believe that

an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual." *Logsdon v. Hains*, 2007 WL 1946851, *6 (6th Cir. July 6, 2007) (slip op.), *citing Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000). Therefore, the Court concludes that Defendants are not entitled to qualified immunity on Thomas' claim of false arrest.

## III.   <u>CONCLUSION</u>

Based on the foregoing, it is hereby **ORDERED** that Defendants' Motion to Dismiss (Doc. 7) is **GRANTED in part** and **DENIED in part**.

Defendants' Motion is granted as to the previously dismissed claims against Defendants City of Cincinnati and J. Rita McNeil; and to the extent that Plaintiffs' claims for unreasonable search are based upon unlawful entry.  Defendants' Motion is denied as to Graham and Thomas' claims against Officers Rackley and Evans for unreasonable search based upon the execution of the search; and Thomas' claim against Officers Rackley and Evans for false imprisonment.

**IT IS SO ORDERED.**

      */s/ Michael R. Barrett*
      Michael R. Barrett, Judge
      United States District Court