**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Claude Graham, *et al.*,

    Plaintiffs,

    v.                        Case No. 1:06cv565

City of Cincinnati, *et al.*,        Judge Michael R. Barrett

    Defendant.

**OPINION AND ORDER**

This matter is before the court upon Defendants' Motion for Summary Judgment (Doc. 31) and Plaintiffs' opposition thereto.  (Doc. 38)

**I.    BACKGROUND**

Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 based upon an unreasonable search and false imprisonment in violation of the Fourth Amendment.  Defendants Detective Evan Evans and Officer Thomas Rackley are sued in both their individual and official capacity.  An earlier ruling by this Court upon Defendants' Motion to Dismiss found that the officers were not entitled to qualified immunity at that stage of the litigation.[1]

On August 24, 2004, Officers Evans and Rackley were investigating an aggravated robbery that occurred near 6012 Madison Road.  (Doc. 31, Ex. A, Evans Aff. ¶ 3) Defendants maintain that another officer at the scene received information from a witness

---

[1] This Court also dismissed the City of Cincinnati and J. Rita McNeil, City Law Director, as parties.  (Doc. 25)  Suits against police officers in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978).  Therefore, the claims against Defendants Evans and Rackley in their official capacity have been dismissed.

that two armed teenagers wearing white masks ran into the building at 6012 Madison Road. (Id. ¶¶ 4, 6) The witness said that the teenagers discarded something before entering the building. (Id. ¶ 5) The suspects were reported to be armed. (Id. ¶ 6) The officers found two white t-shirts in a garbage can outside 6012 Madison Road. (Id. ¶ 7) When Evans knocked on the door of the building, Devon Wordlaw, a friend of Plaintiff Derrick Thomas, looked out of the second-floor window to speak to Evans. (Id. ¶¶ 9-13) Evans claims that Wordlaw gave him verbal consent to search the residence. (Id. ¶ 14) Plaintiffs contend that Wordlaw did not give consent. (Doc. 38) However, this Court previously ruled that Plaintiffs are collaterally estopped from claiming that the entry into the residence was unlawful.[2]

 Evans and Rackley entered the building with other police officers and found Thomas on a couch in the upstairs apartment. (Evans Aff. ¶¶ 15-17) Thomas was handcuffed and escorted outside to a police cruiser. (Id. ¶ 18) According to the complaint and Plaintiffs' Memorandum in Opposition, Thomas was in the police cruiser for approximately thirty minutes before he was released. (Doc. 1, ¶ 24; Doc. 38) However, in his deposition, Thomas stated he was in the car until it was getting dark, which was around 6:00 p.m. (Doc. 34, Derrick Thomas Depo. at 34) Evans claims that he cleared the scene at approximately 2:35 p.m. (Evans Aff. ¶ 30) Dispatch records demonstrate that all police officers had cleared the scene by 3:11 p.m. (Doc. 31, Ex. B ) Thomas' father, Claude Graham, believes he arrived at the house on August 24, 2004 at approximately

---

[2]In ruling on Defendants' Motion to Dismiss, the Court found that collateral estoppel applied because in the state criminal proceedings against Graham, the court found that there was valid consent for the search.

2:30 p.m. (Doc. 33, Claude Graham Depo. at 20) At that time, he did not see any police cruisers in front of his house. (Id.) The victim was shown Thomas, but he could not make a positive identification because the robbery suspects were wearing masks. (Evans Aff. ¶ 19)

During the search, Rackley took pictures of alleged health and fire code violations in the building in order to obtain an administrative search warrant. (Rackley Aff. ¶ 15-16) These photographs are in the record. (Docs. 32-2, 32-3) Plaintiffs allege that personal items were destroyed or missing after the search, and have provided photographs of the alleged damage. (Graham Aff. ¶ 3; Thomas Aff. ¶ 16; Doc. 44) Defendants deny damaging the property and destroying or removing any personal items at the residence. (Evans Aff. ¶ 22-24, Rackley Aff. ¶ 10-12) Defendants also maintain that they did not observe any police officers engaging in these actions. (Evans Aff. ¶ 25, Rackley Aff. ¶ 13)

On September 16, 2004, Graham made a complaint to the Cincinnati Citizen Complaint Authority ("CCA")[3] concerning the actions of Rackley and Evans. (Docs. 38-2, 38-2) The CCA found that the officers had failed to follow Cincinnati Police Department Procedure 12.700, which states in part:

> Request and individual to sign a Consent to Search Warrant Without a warrant Form when conduction all consent searches of residences. Notify a supervisor if an individual gives verbal consent but refuse (*sic*) to sign the form. Supervisors will respond to the scene to verify the consent was given.

---

[3]The CCA consists of a board of seven citizens appointed by the mayor and approved by City Council, a team of professional investigators, and a full-time director with support staff. *See* http://www.cincinnati-oh.gov/cca/pages/-14114-/. After a complaint is filed, the CCA conducts an investigation and reports its finding to the board. *Id.* The board meets once a month to review the investigations and makes findings and recommendations to the City Manager for final disposition. *Id.*

(Doc. 38-2, at 14) The CCA specifically did not address Graham's allegations of theft because that was the jurisdiction of the City Police Department. (Doc. 38-2, at 2) On February 28, 2005, the CCA Board and the City Manager sustained unreasonable search findings against Officers Rackley and Evans, and referred the matter to the Cincinnati Police Department for appropriate action. (Doc. 38-2)

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but then the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita*, 475 U.S. at 587. However, the nonmoving party may not rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

### B.  Section 1983

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Tuttle v. Oklahoma City*, 471 U.S. 808 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an

individual of federal statutory or constitutional rights. *Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001), *citing Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) *and United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir.1992). There is no dispute that the Defendants' acts constituted state action. However, Defendants argue that they did not deprive Plaintiffs of their constitutional rights and are entitled to qualified immunity.

### C. Qualified immunity

The doctrine of qualified immunity protects government officials acting in their official capacities from damages if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *citing Procunier v. Navarette*, 434 U.S. 555, 565 (1978). Qualified immunity involves a two-step inquiry: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and if so, (2) whether that right was clearly established. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006), *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001). If no genuine issues of material fact exist as to whether the public official committed acts that would violate a clearly established constitutional right, summary judgment may be proper. *See Jackson v. Hoylman*, 933 F.2d 401, 403 (6th Cir. 1991) (finding that summary judgment was inappropriate on the issue of qualified immunity when two accounts of an arrest incident differed in all factual respects).

While the defendant bears the burden of pleading the defense of qualified immunity, the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to

qualified immunity. *Miller v. Administrative Office of Courts*, 448 F.3d 887, 894 (6th Cir. 2006), *citing Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

Plaintiffs allege two constitutional violations: false imprisonment and unreasonable search.

### 1. False imprisonment

A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff. *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005), *citing Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). This probable cause requirement applies even where the officer does not make a formal arrest. *Dunaway v. New York*, 442 U.S. 200, 207 (1979); *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) ("Any arrest, whether formal or de facto, requires probable cause.").

As this Court explained in its ruling on Defendants' Motion to Dismiss, certain temporary seizures are justified if the officers have a reasonable articulable suspicion that the detainee is or has engaged in criminal activity. *United States v. Critton*, 43 F.3d 1089, 1094 (6th Cir. 1995); *see also Houston v. Clark County Sheriff Deputy John Does*, 174 F.3d 809, 814 (6th Cir. 1999) ("[a]though there is no bright line that distinguishes an investigative stop from a de facto arrest, the length and manner of an investigative stop should be reasonably related to the basis for the initial intrusion.").

Plaintiffs do not address this claim in their response to Defendants' Motion. As a result, the Court finds that there is no genuine issue of material fact regarding whether Defendants were justified in detaining Thomas in the police cruiser. Based on the witness

report, the officers had a reasonable articulable suspicion to believe that the individuals suspected of committing the aggravated robbery had fled inside 6012 Madison Road. The officers detained Thomas for questioning and to show him to the victim for possible identification. By all accounts, except for his own, Thomas was in the cruiser for about thirty minutes. In any event, Plaintiffs do not argue that Thomas' detention was not reasonably related to the officers' investigation. In addition, the Court finds that because Defendants were investigating an aggravated robbery, they had a justifiable fear for their personal safety, and placing Thomas in handcuffs was warranted. *See Ingram v. City of Columbus*, 185 F.3d 579, 591-92 (6th Cir. 1999) (explaining that handcuffing and detention of suspect with display of firearms is justified where officers making seizures acted out of justifiable fear of personal safety).

Because Plaintiffs have not shown a constitutional violation, Defendants are entitled to qualified immunity on Plaintiffs' claim for false arrest.

### 2. Unreasonable search

The Fourth Amendment provides that "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. Amend. IV.

A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 113 S.Ct. 538, 543 (1992), *quoting United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The Supreme Court has explained that the destruction of property is a "meaningful interference"

constituting a seizure under the Fourth Amendment. *Jacobsen*, 466 U.S. at 124-25; *see, e.g., Bonds v. Cox*, 20 F.3d 697, 701-02 (6th Cir. 1994) (holding that, under *Soldal*, damage to a house, including broken doors, mutilated vinyl siding, broken desks, and holes in walls, rises to the level of "meaningful interference" with one's possessory interests).

Plaintiffs allege that personal items were missing or destroyed as a result of the search. "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment . . ." *U.S. v. Ramirez*, 523 U.S. 65, 71 (1998); *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) (permitting plaintiff to assert her property damage claim under Fourth Amendment); *see also Hill v. McIntyre*, 884 F.2d 271, 278 (6th Cir. 1989) ("[O]fficers executing search warrants must often damage property in order to perform their duty."). Accordingly, the manner in which search is conducted "is subject to later judicial review as to its reasonableness." *Dalia v. U.S.*, 441 U.S. 238, 258 (1979).

To determine the reasonableness of a search under the Fourth Amendment, a court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985), *quoting United States v. Place*, 462 U.S. 696, 703 (1983). Reasonableness depends upon "whether the totality of the circumstances justifie[s] a particular sort of search or seizure." *Id.* at 8-9.

In support of their claim, Plaintiffs rely upon the CCA's finding that Officers Evans and Rackley performed an unreasonable search. Plaintiffs state that the CCA's conclusions and findings constitute "factual findings resulting from an investigation made pursuant to authority granted by law" and are admissible pursuant to Federal Rule of Evidence 803(8), as well as admissions of a party-opponent admissible pursuant to Rule

801(d)(2).

However, as this Court has previously explained, the CCA's finding is not dispositive:

> A city's police department may choose to hold its officers to a higher standard than that required by the Constitution without being subject to or subjecting their officers to increased liability under § 1983. Violation of a police policy or procedure does not automatically translate into a violation of a person's constitutional rights.

*McGee v. City of Cincinnati Police Dept.*, 2007 WL 1169374, *5, n.4 (S.D.Ohio April 18, 2007) (slip op.), *citing Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992). Moreover, the CCA's findings did not specifically address the alleged theft or destruction of property. The CCA's investigation was focused solely on the consent to search, not the manner in which the search was conducted. The CCA concluded that the officers did not follow proper police department procedure in obtaining consent to search, but made no findings with regards to the destruction of property during the search. As a consequence, the CCA findings do not support Plaintiff's claim that the Defendants conducted a reasonable search.

Because Plaintiffs have not shown a constitutional violation, Defendants are entitled to qualified immunity on Plaintiffs' claim for unreasonable search.

### III. CONCLUSION

Based on the foregoing, the Court finds that Defendants are entitled to qualified immunity from Plaintiffs' section 1983. Accordingly, it is hereby **ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. 31) is **GRANTED**;

2. This matter shall be **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

                                                      */s/ Michael R. Barrett*
                                              Michael R. Barrett, Judge
                                              United States District Court